## PHELPS *v.* MAYOR, ETC., OF NEW YORK.

(*Supreme Court, General Term, First Department.* March 13, 1891.)

CONSTRUCTION OF LEASE—REPAIRS.

A lease by a city to plaintiff of certain wharf property contained a covenant for a renewal upon the same terms with certain exceptions.    A renewal lease was executed after the commencement of the new term.    Both leases contained an agreement by the city that it would make such repairs as the commissioners of the department of docks might consider necessary for service during the term, both parties agreeing that no claim should be made that the property was not in such condition; and plaintiff covenanted that, except as so agreed by the city, he would put and keep the property in good repair during the term.    It was admitted that the premises were not in a suitable condition for service at the commencement of the second term; that plaintiff, during the first term, kept the premises in good repair, but that the pier, being old, was not in condition for service for the second term; and that plaintiff had expended a certain sum in putting the wharf in suitable condition for service.    *Held,* that plaintiff, having taken possession under the renewal lease, could not recover for his expenditures for repairs without proof of a decision by the dock commissioners that such repairs were necessary.

Appeal from special term, New York county.

Action by Frank Phelps against the mayor, aldermen, and commonalty of the city of New York.    Defendants appeal from a judgment for plaintiff, entered on trial by the court without a jury.    For former report, see 11 N. Y. Supp. 657.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*William H. Clark,* (*Sidney J. Cowen,* of counsel,) for appellants.    *Thomas E. Rochfort,* (*Abram Kling,* of counsel,) for respondent.

VAN BRUNT, P. J.    This action was brought seeking the reformation of a lease under seal, executed by the defendant to the plaintiff, and for damages. The court, having held that no cause of action for reformation was made out, but that a case might exist for damages, directed the same to be heard at circuit.    Thereupon, by stipulation, the facts having been agreed upon between the parties in reference to the subject of damages, the case was resubmitted, and the learned judge rendered judgment in favor of the plaintiff.

There was no oral testimony taken, and the findings of the court were necessarily based upon the documentary evidence and stipulations presented to it. It appeared from the evidence that on the 30th of April, 1881, the defendant leased the rights of wharfage upon pier No. 40, East river, and one-half of the bulk-head easterly, to the plaintiff for a term commencing May 1, 1882, and ending May 1, 1887, for the annual rental of $9,000, and in said lease or grant covenanted with the plaintiff for a renewal of the lease for five years commencing May 1, 1887, at the option of the plaintiff, and upon the same terms and conditions, save that the rent for the renewal term was to be $11,-000 instead of $9,000, and that the lease or grant for such renewal term should contain no covenant for another renewal.    The plaintiff duly availed himself of this option, and on the 16th of May, 1887, a renewal lease, dated May 1, 1887, was executed.    Both of said leases contained the following clauses: "And the parties of the first part promise and agree that they will, prior to the commencement of the aforesaid term of years, or as soon after such commencement as shall be found practical, make such repairs to the above-described wharf property as the said board of commissioners may consider necessary to put such wharf property in a suitable condition for service during the aforesaid term; and the parties hereto promise, agree, and understand that no claim that the said wharf property is not, or was not at the time of the commencement of said term, in a suitable condition for the uses and purposes hereinbefore mentioned, shall or will at any time be made or allowed." "And the said party of the second part does further covenant, promise, and agree that he will at all times during said term, except as hereinbefore agreed, put, keep, and maintain all the said wharf property, and every part thereof, and the structures thereon, in good and sufficient repair and condition, and will well and sufficiently dredge and keep dredged the slip or slips adjacent thereto; and that all such repairs, rebuilding, and dredging during said term shall be made and done at the sole cost, charge, and expense of the said party of the second part.    And in case the said party of the second part shall make default herein, and shall neglect or refuse to make such repairs, or do such dredging, for the space of ten days after notice so to do shall have been given by the said department of docks, or any proper officer, agent, or employe thereof, or of said parties of the first part, then this grant and everything herein contained shall be forfeited, and the party of the second part will pay to the parties of the first part such damages as they may have sustained; or, at their or its option, the said parties of the first part, or the said department, may make such repairs, or do such dredging, and the full cost and expense thereof shall and will be paid on demand by the said party of the second part to the said parties of the first part."    It appears from the stipulation that both parties claim and admit that the said premises mentioned in said lease were not in a suitable condition for service at the commencement of said term commencing May 1, 1887, and that such claim was made at the time of the execution of said lease, and has ever since been made; and that the plaintiff, from May 1, 1882, to May 1, 1887, put, kept, and maintained said pier and premises and every part thereof in good and sufficient repair and condition; that prior to May 1, 1887, the pier and bulk-head were old, and by that time, notwithstanding the said repairs that plaintiff had put upon them, said premises were not in suitable condition for service for the second five years; and that since May 1, 1887, the plaintiff has expended the reasonable sum of $12,500 for repairs, by which said wharf was placed in a suitable condition for service.    The court also found that at the time of the execution of the second lease the board of commissioners at the head of and governing the department of docks considered it necessary that certain repairs should be made to said premises to put the same in suitable condition for service.

This action was brought to recover the amount expended by the plaintiff in putting the pier in suitable condition for service, and the learned judge be-

low seems to have founded his conclusion as to the plaintiff's right to recover upon the ground that the dock commissioners had decided that the repairs made by the plaintiff were necessary to put the pier in suitable condition for service, and that the defendants had refused to make the same. There is no question but that it was the intention and understanding of the parties that the dock commissioners should determine what was necessary to put the wharf property in suitable condition for service during the term, and that, except so far as they have acted, no claim that the same was not at the time of the commencement of the term in suitable condition for use could be made or allowed.    This is certainly the language of the contract.    The lessee, undoubtedly, if the premises were in an untenantable condition when they were tendered to him, under his lease would have a right to refuse to take possession; but after he had taken possession, then, under the clauses of the lease in question, no claim could be made that the premises were untenantable, unless the dock commissioners so decided.    If the dock commissioners determined that certain repairs were necessary to put the wharf property in suitable condition for service at the commencement of the term, then clearly the defendants were bound to make such repairs, and the plaintiff could recover whatever damage he might sustain by reason of the failure to make such repairs; but beyond that no claim for repairs could be made, because the lease contained the express covenant that the tenant should keep and maintain the property and the structures thereon in good and sufficient repair and condition, and that all repairs, rebuilding, etc., done during the term should be at the sole cost, charge, and expense of the lessee.    Now, in the case at bar there is no evidence whatever, as far as we have been able to ascertain, of any determination upon the part of the dock commissioners that any repairs were necessary to put the premises in a suitable condition for service. It may be claimed that this is contrary to the admission contained in the stipulation, in which it is stated that both parties claim and admit that said premises were not in a suitable condition for service at the commencement of the second term.    Exactly what is meant by this stipulation it is not entirely easy to determine; but there is no admission of any action upon the part of the dock commissioners upon this point.    In respect to the second lease, it might very well be argued that the provision as to repairs prior to the commencement of the term, or as soon after such commencement as shall be found practicable, is entirely inconsistent with the covenant upon the part of the lessee contained in the original lease that he will keep the said wharf property and every part thereof and the structures thereon in good and sufficient repair and condition, and that all such repairs, rebuilding, etc., during said term shall be made and done at his sole cost, charge, and expense; and although it has been admitted upon this record that the plaintiff did, during the first term, keep and maintain the premises, and every part thereof, in good and sufficient repair and condition, such admission seems to be inconsistent with the further admission that on the 1st of May, 1887, notwithstanding such repairs, the wharves were not in a suitable condition for services, the second admission being predicated, however, upon the fact that the pier and bulk-head were old.    It seems to us in the condition of the proofs that, the new lease not having been executed until after the commencement of the term therein mentioned, in the absence of any decision upon the part of the dock commissioners that any repairs were necessary to put the premises in a condition suitable for service, the only course left to the plaintiff was to refuse to take the lease, or to enter into possession of the premises and pay the rent, having no claim for want of repair.    We think, therefore, that the judgment was erroneous, and that the same should be reversed, and a new trial ordered, with costs to the appellant to abide the event.