## FRANK PHELPS, RESPONDENT, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, APPELLANT.

*Lease — pier in the city of New York — renewal lease — repairs by the lessee which the dock department has decided to be necessary — equitable relief refused, a right to damages sustained — procedure upon the law side of the court.*

The city of New York, in 1882, leased a pier to one Phelps for five years, The lease contained a covenant on the part of the city that it would, prior to the commencement of the term, or as soon after as practicable, make such repairs to the property as the board of dock commissioners should deem necessary. The pier was then in bad repair. There was also a mutual covenant that the parties understood, that no claim that the property "is not" or was not, at the commencement of the term, in a suitable condition, should at any time be made; and a further covenant by the plaintiff to keep the property in good repair, with a provision that if he failed the city might do it at his expense. There was also a covenant of renewal for a further term of five year, and a statement that the renewal lease should contain the same covenants, except that the rent was to be larger, and that there should be no further renewal.

HUN — VOL. LXI 66

---

* *Sic* in List of Decisions.

A renewal lease was afterwards executed containing the same covenants as to repairs as the original lease. At that time and subsequently the lessee claimed that the pier was not fit for use. The lessee upon his part had performed his agreement to keep it in repair, but owing to its age mere repairs were not sufficient. The dock department determined that it was necessary to do certain work to put the pier in proper condition, but did not do it. The lessee thereupon did it and brought an action to recover the money expended in so doing.
*Held*, that the action could be maintained.

That the renewal lease was a new grant, and that its covenants must be read as though it was the first inception of the relation between the parties.

That said covenants, read together, must be taken to mean that the dock department bound itself to make such repairs as it deemed necessary; and that having decided certain repairs to be necessary, and having failed to make them, the lessee was authorized by the lease to make them and charge the city with the cost thereof. (INGRAHAM, J., dissenting.)

An action was brought to reform the lease and for damages, and the court denied relief as to reformation, but granted it as to damages, and subsequently the case was tried upon the latter branch at circuit without a jury.

*Held*, that the defendant had sustained no injury, and that the court properly decided not to dismiss the complaint because reformation had been refused.

APPEAL by the defendant, the Mayor, etc., of the City of New York, from a judgment of the New York Special Term, entered in the office of the clerk of the city and county of New York on June 30, 1891, in favor of the plaintiff and against the defendant for the sum of $15,963.33, damages and costs.

*S. J. Cowen*, for the appellant.

*T. E. Rochfort*, for the respondent.

VAN BRUNT, P. J.:

This action was brought by the plaintiff to recover damages for an alleged breach of a covenant upon the part of the defendant to repair the pier which the defendant had leased to plaintiff, and to reform the lease by striking out the stipulation which seemed to prevent the plaintiff from raising the question of its breach.

The action has been heretofore tried and judgment entered denying plaintiff's prayer to reform the lease, but awarding damages for the defendant's breach of the covenant to repair. Upon appeal to the General Term, the General Term reversed that part of the judgment awarding damages and ordered a new trial. The same issues were retried and the court below held that the additional evidence offered supplied the deficiency which the General Term

had declared to be fatal to the first judgment, and judgment was again awarded to the plaintiff for the full amount of his claim.

It appeared that the plaintiff was a lessee of a pier of the defendant under a written lease running from May 1, 1882 to 1887. This lease contained a covenant upon the part of the city as follows:

"And the parties of the first part promise and agree that they will, prior to the commencement of the aforesaid term of years, or as soon after such commencement as shall be found practicable, make such repairs to the above described wharf property, as the said board of commissioners may consider necessary, to put such wharf property in a suitable condition for service during the aforesaid term. And the parties hereto promise, agree and understand that no claim that the said wharf property is not or was not, at the time of the commencement of said term, in a suitable condition for the uses and purposes hereinabove mentioned, shall or will, at any time, be made or allowed."

And a covenant upon the part of the plaintiff as follows:

"And the said party of the second part does further covenant, promise and agree that he will, at all times during said term, except as hereinbefore agreed, put, keep and maintain all the said wharf property, and every part thereof and the structures thereon, in good and sufficient repair and condition, and will well and sufficiently dredge, and keep dredged, the slip or slips adjacent thereto; and that all such repairs, rebuilding and dredging during said term, shall be made and done at the sole cost, charge and expense of the said party of the second part. And in case the said party of the second part shall make default herein, and shall neglect or refuse to make such repairs or do such dredging, for the space of ten days after notice so to do shall have been given by the said department of docks, or any proper officer, agent or employee thereof, or of said parties of the first part, then this grant, and everything herein contained, shall be forfeited, and the party of the second part will pay to the parties of the first part such damages as they may have sustained; or at their or its option, the said parties of the first part, or the said department, may make such repairs or do such dredging, and the full cost and expense thereof shall and will be paid on demand by the said party of the second part, to the said parties of the first part."

And the covenant for renewal, as follows :

"It is further understood and agreed that if, at any time not less than ninety days before the expiration of the above-mentioned term of five years, the party of the second part shall give the parties of the first part, their proper department or officer, notice in writing of his desire to have the present grant renewed, then, and in that case, the said parties of the first part will again grant unto the said party of the second part, for a further term of five years, commencing at the expiration of the present term, all wharfage which may become due for the use and occupation of said pier, such renewed grant to contain like covenants as this present one, except the covenant of renewal, and except that the rent or compensation shall be eleven thousand dollars per annum, and the said wharf property is to be used and occupied during said term only for the purposes of mooring thereto vessels engaged in commerce and loading and discharging the same."

Prior to the expiration of the term contained in this lease, in pursuance of the covenant for renewal, the plaintiff gave the notice entitling him thereto, and subsequently a renewal lease was executed and delivered, containing the same covenants in respect to repairs which were contained in the original lease.

It was admitted upon the trial that, during the first term, the plaintiff put, kept and maintained the premises and every part thereof in good and sufficient repair and condition, but that, notwithstanding such repairs, the pier and bulk-head being old, were not, on the 1st of May, 1887, in suitable condition for service for the second term ; and that such a claim was made by the plaintiff at the time of the execution of the renewal lease, and has ever since been made. It was further admitted that the plaintiff had expended the amount recovered for repairs in and by which said wharf was placed in a suitable condition for service during the second term, and that said sum was a fair and reasonable amount to be so expended.

Upon the hearing before the General Term upon the previous appeal, it was held that the defendant could not be made liable for the amount thus expended, because it did not appear what the board of dock commissioners considered necessary repairs to put such wharf property in suitable condition for service during the term ;

and the question presented upon this appeal is, whether, upon the new trial, this objection was obviated.

Various other points are raised which it is necessary only briefly to consider, and they are as follows : That, because only monetary damages were given, the court should have dismissed the complaint, the action having been brought in equity for a reformation of the lease and for damages.

This point is clearly not well taken.   The plaintiff having shown himself entitled to common law relief, the court sent him to the Circuit Court to have such right tried before a jury ; and a jury trial being waived, the issues were tried before the court without a jury, and the defendant, therefore, sustained no injury thereby.

The next claim presented is, that there was but one lease, and that the first lease and the option, read together, constituted the whole agreement, and that the covenant in regard to repairs by the defendant related only to the commencement of the original lease.   We think there is clear error in this proposition.   It certainly was not so considered by the parties because a renewal lease was executed, and the option to be exercised in pursuance of the covenant contained in the original lease was an option to demand a new grant commencing at the expiration of the term of the first lease, and the provision for renewal contained a statement in detail as to what covenants the renewal lease should contain.   It was clearly a new grant, and all the covenants are to be read as though it was the first inception of the relation between the parties.

The only question, therefore, remaining to be considered is whether the evidence showed that the dock commissioners determined that certain repairs were necessary to put the wharf property in suitable condition for service at the commencement of the term.

It appears from the stipulation entered into between the parties that on the 1st of May, 1887, said pier and bulk-head were not in a suitable condition for service for the second five years, notwithstanding the repairs put upon them by the plaintiff because of its old and infirm condition.   It further appears from the evidence that a controversy sprang up prior to the 1st of May, 1887, the time of the commencement of the new lease between the dock commissioners and the plaintiff as to who should make the repairs necessary to put the wharf property in suitable condition for use, the dock

commissioners claiming that such liability rested upon the plaintiff, and the plaintiff claiming that it rested upon the dock department, and in this correspondence the dock department expressly stated these repairs to be necessary and as recommended by the engineer in chief of their department.

These facts, taken in connection with the stipulation that these repairs were necessary to put the wharf in a suitable condition for service, would seem to show that the dock commissioners determined that these repairs were necessary, and supplied the omission which existed in the case when it was before the General Term on the previous occasion.

We are, therefore, of opinion that the judgment should be affirmed, with costs.

Daniels, J.:

It is clearly proved that the board of dock commissioners did consider the repairs to be necessary which were made by the plaintiff. It is agreed that he had made all the repairs which he became bound to make under the first lease. And it, therefore, follows that the repairs in controversy had become necessary to put the wharf property in a suitable condition for service during the term created by the second lease. These repairs the dock commissioners bound themselves to make, which they subsequently refused to do, and directed the plaintiff to make them. In making them after that, he did no more than to perform the obligation of the commissioners, for which he became entitled to compensation from the defendant. He did only what the commissioners concluded should be done, and which, by the obligation created, the commissioners should themselves have done. He performed their obligation under their direction. And that entitled him to the compensation for doing their work which has been secured by the verdict. I, therefore, conclude that the judgment should be affirmed.

Ingraham, J. (dissenting):

The liability of the city for the amount expended by plaintiff, in repairs to the pier leased by him, depends upon the obligation binding the city contained in the lease.

It is settled that if there is no covenant in the lease imposing such disability, that the defendant is not liable for the repairs made by

plaintiff. (See *Hartford and N. Y. Steamboat Co.* v. *The Mayor*, 78 N. Y., 1.)

By the lease the parties of the first part (the defendants), agreed that they would, prior to the commencement of the term demised, or as soon after such commencement as should be found practicable, make such repairs to the wharf property as the board of commissioners should consider necessary, to put such property in suitable condition for service during the term demised.

If that covenant stood alone, undoubtedly the plaintiff would be entitled to recover for any damage sustained by reason of the failure of the city or the commissioners to make such repairs.

There is, however, added to this covenant a provision that the "parties hereto promise, agree and understand that no claim that the said wharf property is not or was not at the time of the commencement of said term in a suitable condition for the use and purposes hereinabove mentioned, shall or will at any time be made or allowed."

The only construction that can be given to this covenant is that the repairs to be made were to rest entirely within the discretion of the dock commissioners, and that the plaintiff was to make no claim against them or against the city for any failure on their part to observe the covenant that they had made.

The commissioners were public officers acting on behalf of the municipal corporation, and it is not improbable that the plaintiff was willing to depend upon them to have the repairs made without insisting upon a covenant on behalf of the city that he could enforce, and thus to agree that no claim should be made for a failure to make any repairs or to put the wharf property in a suitable condition for use during the term. This seems to be the only construction that will give any effect to the provision in question.

If the city was to be liable for the failure of the dock commissioners to make such repairs, this proviso is absolutely meaningless.

We should not consider whether or not such covenant was a provident one for the plaintiff to make. All that we have to do is to enforce the agreement that was actually made, and the defendant can only be liable for a breach of some express obligation made on its behalf by officers acting under authority to bind them. Here the commissioners agreed that they would put the wharf property in

repair, but the plaintiff agreed that he would make no claim that said wharf property was not put in repair, and it seems to me that, having made such agreement, he is now precluded from suing the city because the wharf property was not put in such repair.

I do not understand that this question was passed on by this court on the former appeal.

There the judgment was reversed because it did not appear that the dock commissioners considered the repairs made by plaintiff as necessary, and the question of liability of the defendant under the covenant does not seem to have been discussed in the opinion.

I think, therefore, the judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.